### PHELAN v. MIDDLE STATES OIL CORPORATION et al.

(District Court, N. D. Texas, at Wichita Falls, October 2, 1926.)

No. 164.

**I. Receivers ⊛➝149.**

An order limiting time for filing claims in receivership, which does not name the United States, is not binding on it.

**2. Receivers ⊛➝149—Court has power to limit time for filing claims in receivership suit and to enforce penalty for noncompliance.**

Courts have power by order to require creditors to file their claims within a time limited in a receivership suit, and to enforce a penalty for noncompliance with its order, which is usually denial of participation.

**3. Receivers ⊛➝149—After receivership suit is ready to be closed and property turned back to corporation owner, United States may not be permitted to delay payment of approved creditors by filing large claim for internal revenue taxes.**

After a receivership suit against a corporation has in effect been closed, the receivers have in their hands sufficient funds to pay allowed claims of creditors, and nothing remains except to pay such claims, discharge the receivers, and return its property to the corporation, the United States may not be permitted to delay the payment of creditors by filing a large delayed claim for internal revenue taxes, which may as well be collected after receivership by usual processes.

In Equity. Ancillary suit by Joseph A. Phelan against the Middle States Oil Corporation and others. On petition for rule to receivers, motion to discharge receiver, and application by the United States for permission to participate in the funds to be distributed. Application by the United States denied, and order to pay allowed claims and for final report and discharge of receivers directed.

Cox, Fulton & Dickey, of Wichita Falls, Tex., for Wichita county.

N. A. Dodge, of Fort Worth, Tex., for the United States.

A. H. Britain, of Wichita Falls, Tex., and C. E. Cooper and McGuire & Marshall, all of Tulsa, Okl., for receivers.

Walter F. Seay, of Dallas, Tex., for surety co.

ATWELL, District Judge. The original action was brought in the Southern district of New York, alleging the improper intermingling of the properties of various corporations. The Dominion Oil Company was eventually brought into the proceedings in this district, where an ancillary bill was filed. Julius M. Mayer, Joseph P. Tumulty, N. T. Gilbert, and Clair Gannon were appointed ancillary receivers.

A short time thereafter, on, to wit, November 29, 1924, a master was appointed, and creditors and claimants were directed to file their claims within four months, or be denied participation in the proceeds of the properties being administered. On April 25, 1925, the collector of internal revenue wrote Receiver Gannon, inclosing a proof of a claim on behalf of the United States covering certain income taxes alleged to be due by the Dominion Oil Company for the years 1919 and 1920, and in the sum of $99,625.59. The collector was informed by the receiver that the claim should be filed with the clerk of the court. The collector apparently paid no further attention to the matter. At any rate, no claim was filed until May, 1926. This claim was another and different claim from the one filed in 1925, and is for the sum of $449,000, and is not for the year 1919, nor the year 1920, but for the year 1921; the collector discovering that no taxes were due for 1919 or 1920.

By November, 1925, the entire business of the estate had been concluded, and the receivers were asking to be discharged, and Wichita county was asking to be paid a certain county tax. During that month the United States attorney appeared as amicus curiæ and asked that the county claim be denied. The court directed the receivers to pay 6 per cent. of that claim, and the present motion by the county is that it be paid the remainder due it.

The receivers and master and officers of the court have carried on the business, and there have been approved, approximately, $25,000 in claims, which are ready for payment and which should be paid, and there is approximately $25,000 in cash on hand with which to make the payments. The property, which is worth approximately $75,000, is ready to be, and should be, returned to its owners.

[1] At the request of the United States the return of the property and the payment of the claims have been delayed from time to time at an added expense to the estate. It may be conceded that the United States was not named in the bar order; that the United States appears in its capacity as a sovereign for the collection of public revenues. It may also be conceded that an order which does not name the United States, like a statute which does not name the United States, will not bind them. Dollar Savings Bank v. U. S., 19 Wall. 227, 22 L. Ed. 80; United States v. Chamberlin, 219 U. S. 261, 31 S. Ct. 155, 55 L. Ed. 204; Guarantee Co. v. Title Co., 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706; Denver Railroad v. U. S., 241 F. 614, 154 C. C. A. 372; In re Tidewater Coal Exchange (C. C. A.) 280 F. 648; The Barendrecht (D. C.) 286 F. 386; United States v. Burmingham Trust Co., 258 F. 562, 169 C. C. A. 502; Reinecke, Collector, v. General Combustion Co., 137 Ill. App. 404 (First District, June 9, 1925).

[2] Under the bankruptcy statute, which mentions the United States, the approved method is to issue process to the collector, requiring him to make claim, if any he has. In re Anderson (C. C. A.) 279 F. 529; In re General Film Corporation (C. C. A.) 274 F. 903; Harris v. Shafer (C. C. A.) 10 F.(2d) 351. Important and necessary it is that the courts have power to require creditors to file their claims. The power to require infers the power to penalize. The penalty for failing to comply is usually a denial of participation. North American Co. v. St. Louis & S. F. Railway Co. (D. C.) 288 F. 618; Employers' Liability Assurance Corporation v. Astoria (C. C. A.) 6 F.(2d) 945; Scott v. Western Pacific Railroad Co., 246 F. 545, 158 C. C. A. 515.

Section 282 of the Revenue Act of February 26th, 1926, shows that Congress appreciated this necessity. It reads:

"Upon the adjudication of bankruptcy of any taxpayer * * * or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States, * * * any deficiency * * * shall * * * be immediately assessed if such deficiency has not theretofore been assessed in accordance with law. Claim for the deficiency * * * may be presented, for adjudication in accordance with law, to the court before which the * * * receivership proceeding is pending. * * *"

[3] In a case, however, where the facts are such as this case discloses, the United States may not enter at this late date for the receiving of any part of the funds now on hand. The testimony shows that the property of the corporation which has been in the hands of the receivers is worth from $60,000 to $75,000; that it is worth as much now as it was

at the time it went into the hands of the receivers; that the machinery of the court has conducted the business, brought order out of entanglement, and has now for distribution approximately enough money to pay off every claim.

It is urgent that the state of Texas receive what is due it, and it is just that the other waiting creditors should receive what is theirs. For almost a year, upon the continued insistence of the United States attorney, the distribution has been delayed. This delay has been expensive to the estate. The original claim that the United States presented is now admitted to be illy founded. The new claim may or may not be good. The court cannot be delayed longer. It is ready to turn the corporation back to its owners. The government can then proceed to collect its claim, as well as it can proceed at the present time. There can be no indefinite delay in the work of the courts, merely for the purpose of paying taxes, "the collection of which can as well be accomplished after receivership by the usual processes."

The amount involved is large. The affairs of the United States are in the hands of men. It must act through men. The Income Tax Law is a new branch of administration, so far as our government is concerned. There are a multitude of cases, and there is a limit to man's endurance. All of this, and more, may be granted. It may also be granted that no particular one in this case can be blamed for any omission. The big fact remains that a court is grinding. The big fact remains that the orderly grinding of a court of justice may not be interrupted by any agency. There is no attractive form of government which leaves out of its scheme the well-ordered, fearless, accomplishing court. Both sovereign government and sovereign citizen must resort to the court for the redress of grievances. Force may not be used by either.

There is really nothing in the situation that appeals to the conscience of the chancellor to cause him to reopen, and redo, and reinvestigate, and reclassify, and rejudge, and reapportion, all of which would have to be done, if the government is permitted to enter at this time. There is no finding against the government as to the validity of its claim. That is not passed upon nor litigated in any way whatsoever. It may assert its claim against the debtor whenever and wherever it sees fit. But permission for it to enter here, into this proceeding, is denied.

An order is directed discharging the receivers, directing them to pay the claim of the state for taxes, and the claim of the surety company, and all other scheduled and allowed claims, and to make final report to this court.